UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| BRANDENBURG TELEPHONE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>SPRINT COMMUNICATIONS COMPANY LP,<br><br>  Defendant. | Civil Action No. 3:09-CV-109-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On February 28, 2023, the Court entered a Memorandum Opinion and Order granting the Motion for Summary Judgment, [R. 101], filed by Plaintiff Brandenburg Telephone Company ("Brandenburg") and denying the Motion for Summary Judgment, [R. 102], filed by Defendant Sprint Communications Company LP ("Sprint"). *See* [R. 115]. The Court reserved ruling on the issue of damages, however, and allowed the parties to file briefs on the following issues: (1) the principal amount owed by Sprint; (2) which interest rate applies, citing to the appropriate tariff, statute, and authority; (3) the total damages due as of February 28, 2023 (including per diem interest going forward); and (4) whether the November 2009 through June 2010 overbilling issue discussed in the Court's opinion remains at issue. *Id.* at 84. The parties have since filed their initial briefs on these issues, [R. 116, R. 117], and Sprint filed an amended brief that corrected an arithmetic error, [R. 118]. The parties have also filed their respective reply briefs. [R. 119; R. 120]. This matter is therefore fully briefed and ripe for review.

1

## I. STANDARD OF REVIEW

As the Court explained in its February 28, 2023 Memorandum Opinion and Order, it may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* [R. 115, p. 19]. "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

In the present case, the only remaining issue in dispute is what late factor to apply to Sprint's late payments, as discussed below. The appropriate late factor to be charged under the Duo County tariff is an issue of law, not fact. *See S. New England Tel. Co. v. Global Naps, Inc.*, No. 3:04-cv-2075(JCH), 2008 WL 534745, *3 (D. Conn. Feb. 25, 2008).

## II. ANALYSIS

### A. Undisputed Issues

Sprint does not dispute that the principal amount due is $2,195,506.00, and it no longer contests the November 2009 through June 2010 overbilling issue. *See, e.g.*, [R. 118-1, p. 6; R. 117, p. 1; R. 119, p. 1]. In fact, Sprint represents that "there are no disputes other than the late factor," *id.* at 2. Brandenburg agrees with the principal amount due and further agrees that the alleged overbilling is no longer at issue. [R. 117, p. 2 ("Brandenburg and Sprint have agreed that the alleged November 2009 through June 2010 overbilling is not an issue, and, when accounting for the disputes honored by Brandenburg, the principal balance owed to Brandenburg is $2,195,506.00."). Further, the parties do not dispute that, if Sprint's proposed late factor of 8% per annum is applied to the principal amount of

$2,195,506.00, then the total damages due as of February 28, 2023 are $6,501,574, and if Brandenburg's proposed late factor of 10.66% per annum is applied, then the total damages as of February 28, 2023 are $9,335,094.00. *See* [R. 118-1, p. 7; R. 117, p. 8].

Accordingly, the Court turns to the remaining issue: what late factor should be applied to the principal amount of $2,195,506.00. There also appears to be some confusion as to the appropriate post-judgment interest rate, which is discussed below.

### B. Pre-Judgment Interest Rate (The Late Factor)

As an initial matter, the Court notes that the filed rate doctrine "requires that common carriers and their customers adhere to tariffs filed and approved by the appropriate regulatory agencies." *MCI Telecomms. Corp. v. Ohio Bell Tel. Co.*, 376 F.3d 539, 547 (6th Cir. 2004). As a result, the doctrine "limits the rates a regulated entity can charge," but it also "guarantees that 'a carrier is entitled to receive the full tariff rate.'" *S. New England Tel. Co*, 2008 WL 534745, at *4 (quoting *Delta Traffic Serv., Inc. v. APPCO Paper & Plastics Corp.*, 931 F.2d 5, 5 (2d Cir. 1991)). In this case, the Duo County tariff expressly provides for a late payment penalty in Section 2.4.1(C)(2). That provision states,

> [I]f no payment is received by the payment date [or if] a payment or any portion of a Payment is received by the Telephone Company after the payment date as set forth in (1) preceding, or if a payment or any portion of a payment is received by the Telephone Company in funds which are not immediately available to the Telephone Company, then a late payment penalty shall be due to the Telephone Company. The late payment penalty shall be the payment or the portion of the payment not received by the payment date times a late factor. **The late factor shall be the lesser of**:
>
> > (a) **the highest interest rate (in decimal value) which may be levied by law for commercial transactions**, compounded daily for the number of days from the payment date to and including the date that the customer actually makes the payment to the Telephone Company, **or**
> >
> > (b) **0.000292 per day**, compounded daily for the number of days from the payment date to and including the date that the customer actually makes the payment to the Telephone Company.

[R. 100-1, p. 37 (emphasis added)]. This provision of the Duo County tariff clearly allows for prejudgment interest, in the form of a late payment penalty fee. *See generally S. New England Tel. Co.*, 2008 WL 534745, at *4 (finding that similar provision allowed for "prejudgment interest, in the form of late payment charges as required under the Tariff" (citations omitted)).

In this case, both parties agree that Section 2.4.1(C)(2) entitles Brandenburg to recover a late payment penalty fee on the $2,195,506.00 withheld by Sprint. *See* [R. 118-1, p. 3 ("Sprint and Brandenburg agree that application of Section 2.4.1(C)(2) [of the Duo County tariff] requires the Court to determine the 'highest interest rate . . . which may be levied by law for commercial transactions.")]; [R. 117, pp. 4–6 (arguing for application of the Duo County tariff)]. However, the parties disagree as to which late factor applies.

Brandenburg insists that the appropriate late factor is 0.000292 per day, or 10.66% per annum. *See generally* [R. 117]. Citing to Section 2.4.1.(C)(2), Brandenburg argues that "[i]n this instance, subparts (a) and (b) of the Tariff yield the same result because the 'highest interest rate which may be levied by law for commercial transactions' is the amount agreed upon by the parties." *Id.* at 3. For support, Brandenburg cites to Kentucky Revised Statutes ("KRS") § 360.010(1). [R. 177, p. 3]. That statute provides, "Except as provided in KRS 360.040,[1] the legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate" as outlined in the statute. KRS § 360.010(1). For example, the parties may agree, in writing, for the payment of interest "[a]t any rate on money due or to become due upon any contract or other obligation in writing where the original principal amount is in excess of fifteen thousand dollars

---

[1] KRS § 360.040(1) applies to interest on judgments (i.e., post-judgment interest) and provides that "a judgment, including a judgment for prejudgment interest, shall bear six percent (6%) interest compounded annually from the date the judgment is entered," unless otherwise provided in that provision. That provision further states that "[a] judgment rendered on a contract, promissory note, or other written obligation shall bear interest at the interest rate established in that contact, promissory note, or other written obligation." *Id.* § 360.040(3).

($15,000)." *Id.* § 360.010(1)(b). Because state law—specifically, KRS § 360.010(1)[2]—allows parties to agree in writing to a pre-judgment interest rate higher than 8%, Brandenburg argues that the "highest interest rate which may be levied by law" is whatever interest rate the parties have agreed upon. *See* [R. 117, pp. 2–4]. Brandenburg also argues that the doctrine of judicial estoppel prevents Sprint from arguing in favor of an 8% late factor, as Sprint has previously requested that interest be calculated according to the terms of the Duo County tariff. *Id.* at 6–8. Relying on these arguments[3] and the 10.66% late factor, Brandenburg calculates the total amount due as of February 28, 2023 as $9,335,094.00. *Id.* at 8.

Sprint, on the other hand, argues that that highest rate "which may be levied by law for commercial transactions" in Kentucky is 8% per annum, also citing KRS § 360.010(1). *See* [R. 118-1, pp. 3–5]. Sprint insists that the plain language of that statute controls. On this point, Sprint acknowledges that the law allows parties to agree to an interest rate other than 8%, but insists that "levied," as used in the tariff, means "imposed" and not "agreed to." *Id.* In other words, Sprint argues that the highest rate which may be *levied* by law does not include the highest rate the parties may *agree* upon. *Id.* Sprint further argues that, even if the tariff allowed for imposition of a higher "agreed to" rate, the Duo County tariff is not an agreement between the parties, and Section 2.4.1(C)(2) is not an agreement to pay interest, as it references a "late factor," but not "interest." *Id.* at 5–6. Relying on

---

[2] Brandenburg also cites to KRS § 360.040(3), *see* [R. 117, p. 4], which provides that "[a] judgment rendered on a contract, promissory note, or other written obligation shall bear interest at the interest rate established in that contract, promissory note, or other written obligation." As already noted, that statute applies to *post*-judgment interest rates and is discussed below.

[3] Brandenburg also cites to KRS § 360.027 and argues that Sprint, as a limited partnership, is barred from pleading "the taking of more than the legal rate of interest, as a defense to any action brought against it to recover damages on, or enforce payment of, or other remedy on, any mortgage, bond, note, or other obligation." [R. 117, p. 4 (quoting KRS § 360.027) (internal quotation marks omitted)]. Sprint addresses this allegation in its reply brief and explains that it is not raising a usury defense. [R. 119, p. 3]; *see also* [R. 118-1, p. 5 n.1].

these arguments and the 8% late factor, Sprint calculates the total amount due as of February 28, 2023 as $6,501,574. *Id.* at 7.

In considering these arguments, the Court first notes that, despite ample (and additional) opportunity for briefing, the parties have failed to cite any case law interpreting similar tariff provisions. Nevertheless, the Court has located such cases. For example, in *Southern New England Telephone Co. v. Global Naps, Inc.*, the United States District Court for the District of Connecticut considered a tariff with a nearly identical late payment penalty provision. *See* 2008 WL 534745, at *2. That tariff's penalty provision provided "for a late payment charge that shall be the lesser of 'the highest interest rate (in decimal value) which may be levied by the law for commercial transactions, compounded daily' or '.000590 per day [24% per annum], compounded daily.'" *Id.* The defendant-customer argued that the "highest interest rate . . . which may be levied by law for commercial transactions" was 10% per annum, as set forth in the state statute. *Id.* at *4 (citing Connecticut General Statute ("C.G.S.") § 37-3a).[4] The plaintiff-carrier argued that the state statute "does not limit the rate of prejudgment interest where the parties have agreed to a higher rate," like the 24% rate stated in the tariff. *Id.* at *5 n.6. The Court found that this argument

> ignores the fact that in the "agreement" between [the parties], that is the Tariff, the parties agreed to the rate of .000590 *or* the "highest interest rate . . . which may be levied by law." While [the plaintiff] may be correct that C.G.S. § 37-3a would not apply had the Tariff only specified the .000590 rate, such is not the case here.

*Id.* (internal citations omitted). The Court therefore found that, "pursuant to the Tariff's requirement that late payments be accrued at the lesser of 'the highest interest rate . . . which may be levied by law for commercial transactions' or .000590 per day, [the plaintiff's] calculation of late payments must be made" at the rate provided by the state statute, or 10% per annum. *Id.* at *5.

---

[4] This statute provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions." C.G.S. § 37-3a.

6

Other courts have ruled similarly. *See MCI Worldcom, Inc. v. Tele Tower, Inc.*, No. 01 CIV. 0255(LAK), 2002 WL 378424, at *1 (S.D. N.Y. Mar. 11, 2002) (finding that statutory maximum of 16% applied where agreement contemplated "the lesser of" 18% per annum or "the maximum rate allowed by law"); *F.D.I.C. v. Cromwell Crossroads Assocs., Ltd. Partnership*, 480 F.Supp.2d 516, 529 (D. Conn. 2007) (finding that statutory maximum interest rate of 10% applied where a stipulated judgment stated that interest "shall begin to run on the unpaid portion of the judgment at an interest rate of 24% or the highest amount allowed under [state] law"). The Court finds the reasoning of these cases and *Southern New England Telephone Co.* to be persuasive. Under the plain language of the Duo County tariff, the parties agreed to the *lesser of* the highest rate allowed under state law, or 10.66% per annum. Because the highest rate allowed under state law is 8% per annum, that is the rate that must apply in this case.

The few cases cited by the parties do not compel a different result. For example, Brandenburg cites to *Cincinnati Bell Telephone Co. v. Allnet Communications Services*, 17 F.3d 921 (6th Cir. 1994) and argues that it supports application of an interest rate higher than the statutory rate, so long as that higher rate is set forth in the applicable tariff. *See* [R. 117, pp. 4–5]. In the *Cincinnati Bell* case, the tariff provided for 18% interest as a penalty for late payments. *See Cincinnati Bell Tel. Co.*, 17 F.3d at 925. The district court found, however, that 6% was more reasonable, as the statutory interest rate was 4.11%. *Id.*; *see also Cincinnati Bell Tel. Co. v. Allnet Commc'n Servs.*, 810 F. Supp. 217, 223 (S. D. Ohio 1992)). The Sixth Circuit disagreed, explaining that the "filed tariff controls the amount of interest due," and "the parties are bound by the lawfully filed tariff." *Cincinnati Bell Tel. Co.*, 17 F.3d at 925. Thus, the appropriate interest rate was 18%. *Id.*

Relying on this case, Brandenburg argues that both it and Sprint are bound by the terms of the Duo County tariff, "and Brandenburg is entitled to a late payment fee equal to the interest rate to which Sprint agreed by using Brandenburg's services pursuant to the Tariff." [R. 117, p. 5]. The

7

Court agrees that the parties in this case are bound by the terms of the lawfully filed Duo County tariff. However, unlike the tariff in the *Cincinnati Bell* case, the Duo County tariff does not specify one definite interest rate that must be applied. Rather, it states that the appropriate late factor is *either* "the highest interest rate (in decimal value) which may be levied by law for commercial transactions" *or* "0.000292 per day," whichever is less. [R. 100-1, p. 37]; *see also S. New England Tel. Co.*, 2008 WL 534745, at *4 n.5 (noting that the plaintiff had cited to cases, including *Cincinnati Bell*, that were distinguishable because "in those cases the tariff appeared only to specify a rate and not to include language limiting the late payment fees to the highest rate allowed by law"). In other words, the terms of the tariff bind the parties to the lesser of (1) the highest interest rate allowed under state law,[5] or (2) 0.000292. Under the filed rate doctrine, the parties are bound by these terms.

Nevertheless, Brandenburg insists that these terms allow it to charge 0.000292 per day, or 10.66% per annum, regardless of the highest statutory rate. Brandenburg's only explanation is that the "highest interest rate which may be levied by law" must be whatever rate the parties have agreed upon, because the law allows the parties to agree to an interest rate higher than the statutory rate. *See* [R. 117, pp. 2–4]. But this suggested interpretation of Section 2.4.1(C)(2) is circular, at best. Under Brandenburg's interpretation, the applicable late factor will always be 10.66% per annum, because that will always be the highest rate allowed under the law (i.e., the rate that the parties agreed upon, according to Brandenburg), and the parties would therefore never need to consider the statutory rate. For example, if the highest rate allowed under the state statute was 12%, the 10.66% rate would apply, as it is the lesser of the two options. But if the highest rate allowed under the statute is less than

---

[5] In considering the highest pre-judgment interest rate that may be levied by law, the Court finds, and the parties do not dispute, that Kentucky law controls. *See generally* [R. 118-1 (applying Kentucky law); R. 117 (same)]; *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 497 (6th Cir. 2013) ("[I]t is well-accepted that a federal court sitting in diversity should use the state-law interest rate when awarding prejudgment interest."); *S. New England Tel. Co.*, 2008 WL 534745, *5 (applying state law to determine the "highest interest rate . . . which may be levied by law for commercial transactions).

10.66% (as is the current rate of 8%), then the 10.66% rate would apply, as it is the highest rate the parties agreed upon, according to Brandenburg. This reading of the tariff would render the "lesser of" and "highest rate which may be levied by law" language completely unnecessary. The Court declines to interpret the tariff in a way that renders certain provisions to be superfluous. *See Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 610 F. App'x 464, 468 (6th Cir. 2015) ("[I]n construing contracts, we give effect to all the language included therein, as 'the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous.'") (quoting *Ramirez v. Health Net of Ne., Inc.*, 938 A.2d 576, 568 (Conn. 2008)) (internal quotation marks omitted); *Dotson v. Arkema, Inc.*, 397 F. App'x 191, 194 (6th Cir. 2010) (declining to interpret a release in a way that would render a certain phrase superfluous).

      Brandenburg's judicial estoppel argument is likewise unavailing. *See* [R. 117, pp. 6–8]. The Court's February 28, 2023 Memorandum Opinion and Order discussed the elements of judicial estoppel in great detail. *See* [R. 115, pp. 47–61]. Specifically, the Court cited to three factors that a district court should consider when applying the doctrine: (1) whether the party's current position is "clearly inconsistent" with its earlier position; (2) whether that party succeeded in persuading a court to accept that earlier position; and (3) whether the party asserting inconsistent opinions would derive an unfair advantage or impose an unfair detriment to the other party if not estopped. *Id.* at 47 (citing *Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*, 855 F. App'x 239, 245 (6th Cir. 2021)). Brandenburg does not address any of these factors in its damages briefing. Instead, Brandenburg cites to Sprint's characterizations of its refund requests, which included interest "calculated pursuant to" or "under the terms of" the Duo County tariff. [R. 117, p. 6]. But even assuming Sprint has asserted two clearly inconsistent opinions with respect to the appropriate late factor, Brandenburg has not demonstrated—nor even alleged—that Sprint succeeded in persuading

this or any other court to accept its earlier inconsistent opinion. To put it simply, Brandenburg has not demonstrated that judicial estoppel is appropriate with respect to this damages issue.

In sum, the Court finds that the plain language of Section 2.4.1(C)(2) clearly requires the Court to impose the lesser of: (1) the highest interest rate which may be levied by Kentucky law for commercial transactions, or in other words, the statutory rate of 8% per annum, as outlined in KRS § 360.010(1), or (2) 0.000292 per day, which amounts to 10.66% per annum. Because currently, the highest interest rate that may be levied against Sprint under Kentucky law is lower than 10.66% per annum, the Court finds that the statutory rate of 8% per annum applies.

### C. Post-Judgment Interest Rate

Lastly, there appears to be some confusion as to the appropriate post-judgment interest rate. Sprint argues that post-judgment interest is determined by 28 U.S.C. § 1961. *See, e.g.*, [R. 118-1, p. 7]. That provision governs post-judgment interest in diversity cases like this one. *See Estate of Riddle ex rel. Riddle v. Southern Farm Bureau life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (citations omitted). Brandenburg does not directly address this provision, but repeatedly cites to Kentucky's post-judgment interest statute, KRS § 360.040(3), *see* [R. 117, p. 4; R. 120, p. 4], which provides that "[a] judgment rendered on a contract, promissory note, or other written obligation shall bear interest at the interest rate established in that contract, promissory note, or other written obligation." Regardless, under either provision, the law is clear: the parties may agree to a post-judgment interest rate. *See In Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993) (explaining that parties can agree to a different rate than the standard rate set forth in 28 U.S.C. § 1961). Here, the plain language of the Duo County tariff provides that the applicable late factor should be "compounded daily for the number of days from the payment date to and including the date that the customer actually makes the payment to the Telephone Company." [R. 100-1, p. 37]. In other words, the 8% per annum applies both pre- and post-judgment, until the payment is made in full. The parties

have not presented any authority demonstrating that a different post-judgment interest rate must apply in this case. Accordingly, the Court finds that the appropriate post-judgment rate is 8% per annum, as set forth in the Duo County tariff.

### D. Total Damages Due

The parties do not dispute that, once the 8% per annum late factor is applied to the principal amount of $2,195,506.00, the total amount of damages due as of February 28, 2023 (the date of entry of the Court's Memorandum Opinion and Order, [R. 115]) is $6,501,574.00. *See, e.g.*, [R. 118-1, p. 7]. The parties further agree that a per diem rate cannot be precisely stated, as interest is compounded daily. [R. 118-1, p. 7; R. 120, p. 5 n.1]. Accordingly, the Court will not state a precise per diem rate herein but will instead order that the pre-judgment interest rate of 8% per annum apply to the principal amount owed up through March 31, 2023, the date of this opinion and its corresponding judgment. As already explained, this same 8% per annum rate will apply post-judgment.

### III. CONCLUSION

For the reasons set forth above, the Court finds that the principal amount owed by Sprint is $2,195,506.00; the appropriate pre-judgment interest rate under the Duo County Tariff is 8% per annum; the total damages due as of February 28, 2023 is $6,501,574; pre-judgment interest at 8% per annum will continue to apply up through the date of entry of this Memorandum Opinion and Order (and its corresponding judgment); and the post-judgment interest rate going forward is 8% per annum, as set forth in the Duo County tariff.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff Brandenburg Telephone Company is **AWARDED** damages in the amount of **$6,501,574, as of February 28, 2023**.

2. The pre-judgment interest rate of 8% per annum **SHALL** apply through the date of entry of this Memorandum Opinion and Order and its corresponding judgment.

3. Post-judgment interest **SHALL** accrue at 8% per annum.

4. This matter is **STRICKEN** from the Court's active docket.

5. A separate judgment shall follow.

This the 31st day of March, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record